## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LORETTA J. FROST,

            Plaintiff,

            v.

PRAXAIR, INC., et al.,

            Defendants.

Civil Action No. 17-3612 (MAS) (TJB)

**MEMORANDUM ORDER**

      This matter comes before the Court upon Defendant Praxair, Inc.'s ("Defendant") Motion for Summary Judgment. (ECF No. 32.) Plaintiff Loretta J. Frost ("Plaintiff") opposed (ECF No. 33) and Defendant replied (ECF No. 29). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendant's Motion is denied.

**I.    BACKGROUND**

      This action involves an alleged trip-and-fall incident that occurred on Defendant's property. Defendant "is an industrial gas and equipment supply company which owns an approximately twenty (20) acre plot of land in Keasb[e]y, New Jersey," (the "Property"). (Def.'s Statement of Material Facts ("DSMF") ¶ 3, ECF No. 32-2; Pl.'s Resp. to DSMF ("PRDSMF") ¶ 3, ECF No. 32-2.) Pursuant to a Lease Agreement, the Woodbridge Board of Education ("BOE") leases a certain portion of the Property that it uses as a transportation depot. (DSMF ¶¶ 6, 10; PRDSMF ¶¶ 6, 10.) At all times relevant, Plaintiff was employed by the BOE as a bus driver. (DSMF ¶ 23; PRDSMF ¶ 23.) In the instant Motion, the parties dispute whether the incident occurred on the leased premises.

## A. The Lease Agreement

Defendant and the BOE executed the Lease Agreement in 1994. (DSMF ¶ 6; PRDSMF ¶ 6; *see generally* Agreement *27,[1] Ex. C to Def.'s Moving Br., ECF No. 32-7.) Pursuant to Article 5.1, the BOE is responsible for "tak[ing] good care of the Premises and . . . keep[ing] and maintain[ing] the interior and exterior thereof in a clean and orderly condition and perform[ing] all necessary or appropriate maintenance, repair and restoration work, including snow removal on the driveways . . . and parking areas of the Premises and landscaping." (Agreement *34–35.) The agreement does not appear to define the term Premises. Instead, the agreement indicates that the BOE agreed "to lease approximately 4.5 acres of land, including a building containing approximately 14,785 square feet of space, lying within the Subject Property, as more particularly identified in Exhibit A attached [t]hereto[.]" (*Id.* at *27.) The attached Exhibit A is a topographical map that seemingly identifies the portion of the Property that the BOE leased. (*Id.* at *63.)

## B. The Incident and Present Action

On October 2, 2015, Plaintiff parked her vehicle in the employee parking lot and then attempted to make her way to the BOE office building. (DSMF ¶ 24; PRDSMF ¶ 24.) While walking on the parking lot walkway, Plaintiff sustained injuries when she tripped and fell over a pothole. (DSMF ¶ 25; PRDSMF ¶ 25.)

On March 31, 2017, Plaintiff filed the instant negligence action against Defendant in the Superior Court of New Jersey, Law Division, Middlesex County.[2] (Superior Ct. Compl., Ex A to

---

[1] Page numbers preceded by an asterisk refer to the page number of the ECF header.

[2] Plaintiff indicates that she is precluded from filing a lawsuit against the BOE "due to [a] Workers' Compensation bar." (Pl.'s Opp'n Br. 19, ECF No. 33.)

2

Notice of Removal, ECF No. 1.) Thereafter, on May 19, 2017, Defendant removed the matter to this Court. (*See* Notice of Removal.)

### C. Lease Amendment

At some point after Plaintiff commenced the present action, Defendant reviewed the Lease Agreement. (DSMF ¶ 29; PRDSMF ¶ 29.) Defendant avers that "[d]uring this review, it was observed—for the first time since the inception of the lease—that due to a drafting error the Exhibit A attached to the lease . . . did not contain the area in which the employee parking lot is located." (DSMF ¶ 30.) According to Defendant, the "BOE itself recognized that the omission of the parking area was the result of an inadvertent error, as on June 15, 2017 a formal board meeting was called to address this issue." (DSMF ¶ 34.) That same day, Defendant and the BOE executed a Lease Amendment that purports to retroactively amend Exhibit A of the agreement to include the parking lot area. (DSMF ¶ 36; PRDSMF ¶ 36; *see* Amendment *74, Ex. D to Def.'s Moving Br., ECF No. 32-7.) The amendment states, in part, that the BOE "has continuously used and occupied an additional area of [Defendant's] property which, is not depicted on Exhibit A attached to the Lease, and the parties wish to correct the description of the Premises to include the [employee parking area]." (Amendment *74.)

During the course of this litigation, the parties deposed three BOE employees: John Hapstak, the BOE's District Service Manager; Mark Cinelli, the BOE's Transportation Supervisor; and Michael Beaudrow, the BOE's Manager. (DSMF ¶¶ 12–13, 18, 21.) Those employees asserted that the BOE has maintained the parking area since the lease's inception. (*Id.* ¶¶ 12–14, 17–22, 31–33.)

#### D.   Procedural History

As noted above, Plaintiff commenced the instant action in March 2017 and Defendant removed the matter to this Court shortly thereafter. In September 2017, the Court entered an Order staying this matter pending Plaintiff's anticipated surgical procedure. (ECF No. 10.) In August 2018, the Court entered an Order lifting the stay. (ECF No. 13.) In July 2019, the Court entered an Order referring this matter to arbitration. (ECF No. 17.) In October 2019, an arbitration award was filed under seal and Plaintiff requested a trial de novo shortly thereafter. (*See* ECF No. 23.)

In December 2019, Defendant moved for summary judgment. (ECF No. 25.) Plaintiff opposed (ECF No. 26) and Defendant replied (ECF No. 29). Because both parties' submissions failed to comply with Local Civil Rule 56.1, the Court issued a July 2020 Memorandum Order denying Defendant's motion without prejudice. (ECF No. 30.) On August 21, 2020, Defendant refiled the instant Motion. (ECF No. 32.)

### II.   **LEGAL STANDARD**

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under the governing law[,]" *Anderson*, 477 U.S. at 248—raises a "genuine" dispute if "a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). "Disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

4

To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in the light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if . . . sufficient evidence [is provided] to allow a jury to find [for him] at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

## III.   DISCUSSION

Defendant argues that it is entitled to summary judgment because Plaintiff fails to demonstrate a prima facie case of negligence. (Def.'s Moving Br. 5, ECF No. 32-4.) Specifically, Defendant contends that "Plaintiff cannot demonstrate that [Defendant] owed or breached a duty regarding the subject parking area and walkway, as both the BOE and [Defendant] understood the lease to impose all responsibility for the subject area upon the BOE as evidenced by [their] course of performance under the agreement." (*Id.*)

In opposition, Plaintiff points out that the Lease Agreement did not include the subject parking lot. (Pl.'s Opp'n Br. 16–20.) Plaintiff argues that Defendant "cannot retroactively amend [the] Lease Agreement in an effort to shield itself from liability." (*Id.* at 19–20.)

In reply, despite having relied on contract-based cases in support of its Motion, (*see* Def.'s Moving Br. 5–11), Defendant asserts that "[t]his is a tort, not a contract claim, which requires [P]laintiff to prove the existence of a duty." (Def.'s Reply Br. *2, ECF No. 29.) Defendant then proceeds to reallege facts in support of its course of performance argument. (*See id.*)

5

"A district court's interpretation of a contract presents a question of law." *Immunex Corp. v. Sandoz Inc.*, 395 F. Supp. 366, 416 (D.N.J. 2019) (citation omitted). "Courts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958 (N.J. 2014) (citation omitted). It is well-settled that "if the contract into which the parties have entered is clear, then it must be enforced" as written. *Maglies v. Estate of Guy*, 936 A.2d 414, 435 (N.J. 2007). In that regard, courts cannot "supply terms to contracts that are plain and unambiguous," or "make a better contract for either of the parties than the one which the parties themselves have created." *Id.* at 434–35. An ambiguity exists if "the terms of the contract are susceptible to at least two reasonable alternative interpretations[.]" *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008). Nonetheless, a "court should not torture the language of [a contract] to create ambiguity." *Stiefel v. Bayly, Martin & Fay of Conn., Inc.*, 577 A.2d 1303, 1308 (N.J. Super. Ct. App. Div. 1990).

"Under New Jersey and Third Circuit law, extrinsic evidence" may "be admitted to aid in interpretation of an ambiguous agreement." *Int'l Paper Co. v. Rexam, Inc.*, No. 11-6494, 2013 WL 3043638, at *4 (D.N.J. June 17, 2013) (citing in part *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 137 (3d Cir. 1993)). "Importantly, however, such an inquiry would only be reached following a determination of ambiguity." *Id.* (citing *Quick v. N.L.R.B.*, 245 F.3d 231, 247 (3d Cir. 2001)).

Here, in arguing that it owed no duty to Plaintiff, Defendant highlights its course of performance with the BOE to demonstrate that they "operated with the intent and understanding that the parking area was included in the terms of the original lease agreement and was the BOE's responsibility." (Def.'s Moving Br. 5, 11.) But Defendant's reliance on extrinsic evidence is

misplaced. As Defendant notes, "[r]egarding the course of performance doctrine, when interpreting a contract[,] . . . a court will consider not only the specific language used but also 'the meanings suggested by counsel[] and the extrinsic evidence offered in support of each interpretation.'" *Id.* at 5 (second alteration in original) (quoting *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 164 (3d Cir. 2001)). Defendant, however, does not claim that the Lease Agreement is ambiguous or otherwise unclear, much less offer an alternative interpretation. To the contrary, Defendant notes that after reviewing the agreement, it apparently "recogniz[ed] that [the omission] was an obvious and inadvertent error" and thereafter executed the amendment "which retroactively amended the exhibit to include the parking area." (*Id.* at 1–2.) In that regard, Defendant cites no case law or legal authority—nor is the Court aware of any—that permits parties to retroactively amend a contract particularly where, as here, the interests of third parties are at issue.

Based on the foregoing, Defendant fails to demonstrate that the proffered extrinsic evidence should be considered because it points to no ambiguity in the agreement. *Int'l Paper Co.*, 2013 WL 3043638, at *4. To the extent Defendant requests that the Court find the retroactive amendment is valid, the Court declines to do so. The Court, accordingly, finds that Defendant fails to establish as a matter of law that Plaintiff cannot state a prima facie case of negligence. Accordingly,

**IT IS** on this 28th day of March 2021, **ORDERED** that:

1.  Defendant's Motion for Summary Judgment (ECF No. 32) is **DENIED**.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**